# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSE ANTONIO PELAYO AGUILAR, )<br>and PATRICIA SUGEY BRISENO )<br>HERNANDEZ ) | Criminal Action No. 13 CR 184<br><br>Hon. Charles R. Norgle |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court are Defendants Jose Antonio Pelayo Aguilar ("Aguilar") and Patricia Sugey Briseno Hernandez's ("Hernandez") (collectively, "Defendants") Consolidated Motions to Quash Arrest and Suppress Physical Evidence, Invalidate Consent, and Suppress Statements. For the following reasons, the motions are denied in part, and a hearing on the motions to suppress Defendants' post-arrest statements shall take place before the assigned magistrate judge consistent with this Opinion and Order.

## I. BACKGROUND

On February 1, 2013, Team D-5 of the Chicago Police Department Narcotics Division—including seven surveillance officers and two enforcement officers—conducted a narcotics investigation in the area of West 36th Street and South Rockwell Street in Chicago, Illinois. While conducting surveillance, at approximately 5:30 p.m., officers observed Aguilar and Hernandez in a white 2007 Nissan Murano (the "Murano") driving slowly westbound on West 36th Street from South Rockwell Street, followed by a black 2012 Chevrolet Malibu (the "Malibu"), driven by Individual A. Both of the vehicles parked near the 2600 block of West 36th Street, at which point Hernandez got out of the Murano, driven by Aguilar, and placed a

paper bag or brick-like object in the passenger side of the other vehicle, the Malibu. Hernandez walked back to the Murano and both vehicles left the area.

Officers separately followed both vehicles. Officers initiated a traffic stop of the Malibu when the driver failed to use a proper signal when making a left turn. When officers approached the vehicle, they saw in plain view the same brown paper bag that Hernandez placed into to the vehicle, and observed therein a brick-like object wrapped in clear and black plastic that was consistent with the appearance of narcotics. The brick-like object contained a white powdery substance that appeared to be approximately 1 kilogram of cocaine, which later tested positive for the presence of cocaine.

Shortly thereafter, officers approached the Murano, where Defendants and a third person were seated inside the car. Defendants sped away, leading officers in a pursuit first by car, and then by foot near the 3900 block of South Francisco Avenue. Defendants were eventually found in a nearby backyard, hiding under a rear porch at 2910 West 39th Street. Defendants were arrested and placed in separate vehicles. A bag containing United States currency was found nearby.

Following their arrests, both Defendants made inculpatory statements and consented to a search of their apartment. Defendants assert that, at the time of their arrests, officers pointed guns at them, pulled Hernandez's hair, punched and kicked Aguilar, and hit him in the head with a hard object. Defendants further claim that officers gave an incomplete recitation of their Miranda v. Arizona, 384 U.S. 436 (1966), rights and made threats and false promises of leniency to induce their statements and consent.

Notwithstanding Defendants' written consent to search their apartment, officers obtained a warrant from the Circuit Court of Cook County authorizing a search of Defendants' apartment.

During a search of the apartment, officers found and recovered 79 bricks of narcotics (approximately 100 kilograms)—which later tested positive for the presence of cocaine—wrapped in plastic, consistent in appearance with the cocaine delivered by Hernandez to Individual A. Twenty-four of these bricks were recovered from a shelf in a closet that contained men's clothing; fifty-five bricks were recovered from a shelf in a closet that contained women's clothing. Other evidence of narcotics trafficking was also recovered, including $500,000 in United States currency, two money counters, a heat sealer, three boxes of heat sealed bags, one box of vacuum sealed rolls, and two ledgers containing information about drug transactions. Aguilar was charged by indictment with one count of possessing with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of distributing 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). Hernandez was charged by indictment with one count of distributing 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1).

Defendants now move to quash their arrests and suppress physical evidence, invalidate consent, and suppress statements. Their motions are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"A defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality." United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992) (citing United States v. Rollins, 862 F.2d 1282, 1291 (7th Cir. 1988)); see also United States v. Toro, 359 F.3d 879, 885 (7th Cir. 2004). An evidentiary hearing on a motion to suppress is not required as a matter of course; rather, a hearing is warranted only "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to

conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." United States v. McGaughy, 485 F.3d 965, 969 (7th Cir. 2007) (internal quotation marks and citations omitted).

## B. Consolidated Motions to Quash Arrest and Suppress Physical Evidence, Invalidate Consent, and Suppress Statements

Defendants first move to quash their arrests, arguing that the arrests were made without probable cause in violation of the Fourth Amendment. Specifically, Defendants argue that police conduct in this case elevated an investigative stop under Terry v. Ohio, 392 U.S. 1 (1968), into an arrest, which was unsupported by probable cause. See United States v. Bullock, 632 F.3d 1004, 1014-15 (7th Cir. 2011) ("A Terry stop based on reasonable suspicion can ripen into a de facto arrest that must be based on probable cause if it continues too long or becomes unreasonably intrusive." (citing United States v. Robinson, 30 F.3d 774, 784 (7th Cir. 1994)). The government argues that prior to Defendants' arrests there was no Terry stop; instead, Defendants fled from law enforcement (first speeding away in the Murano and then by foot), were found hiding under a porch in a backyard, and were arrested by law enforcement officers at the first opportunity to do so.

"A Terry investigative stop is a brief detention which gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity." Bullock, 632 F.3d at 1014-15 (internal quotation marks and citation omitted). "[I]n determining whether particular circumstances rise to the level of a reasonable suspicion, courts must take into 'consideration . . . the modes or patterns of operations of certain kinds of lawbreakers,' which allow 'trained officer[s] [to] draw [ ] inferences and make[ ] deductions . . . that might well elude an untrained person." United States v. Riley, 493 F.3d 803, 809 (7th Cir. 2007) (quoting United States v. Cortez, 449 U.S. 411, 419 (1981)) (alterations in

4

original). By contrast, "[p]robable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 714 (7th Cir. 2013); see also United States v. Burnside, 588 F.3d 511, 517 (7th Cir. 2009) ("[P]olice may arrest an individual if they have probable cause to believe that the individual engaged in criminal conduct as an arrest supported by probable cause is reasonable by its very nature." (internal citations omitted)). "The events leading up to an arrest are viewed from the standpoint of an objectively reasonable police officer." Burnside, 588 F.3d at 517 (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)).

It is undisputed that during a February 1, 2013 narcotics investigation in the area of West 36th Street and South Rockwell Street in Chicago, Illinois, police observed the following: Aguilar and Hernandez were driving slowly westbound on West 36th Street from South Rockwell Street at approximately 5:30 p.m., followed by Individual A, driving another vehicle; both of the vehicles parked near the 2600 block of West 36th Street; Hernandez placed a paper bag or brick-like object in the passenger side of the other vehicle, the Malibu; and thereafter both vehicles left the area. Following a traffic stop of the Malibu, officers recovered a brown paper bag that contained a brick-like object wrapped in clear and black plastic that was consistent with the appearance of narcotics. Meanwhile, other officers continued surveillance on the Murano. It is also undisputed that the arresting officers knew the foregoing facts. When the officers approached the Murano, where Defendants were seated inside the car, Defendants fled first by car and then by foot into a back yard where there were found hiding under a rear porch. Officers also located a bag of money during a search of the surrounding area.

Under the totality of the circumstances, the experienced narcotics officers had sufficient probable cause to arrest Defendants, and to do so with guns drawn, based on their observation of an apparent drug deal, and recovery of a brick-like object consistent with the appearance of narcotics. See Burnside, 588 F.3d at 518-19 ("For an arrest, officers only need to believe objectively that the conduct observed was consistent with drug trafficking. The officers, employing even a modicum of common sense, had probable cause to conclude that something illegal occurred." (internal citation omitted)); United States v. Blalock, 523 F. App'x 404, 406 (7th Cir. 2013) (non-precedential order); see also United States v. Kenerson, 585 F.3d 389, 392-93 (7th Cir. 2009) ("[T]rade in controlled substances is dangerous for all involved. Dealers may arm themselves for protection against competitors, addicts, and the police. In fact, a rational drug dealer may well carry a gun, given these same realities and expectations."); United States v. Askew, 403 F.3d 496, 508 (7th Cir. 2005) ("Drug arrests can warrant intrusive tactics because of their inherent danger."). Defendants' flight and the recovery of money found in a paper bag were just icing on the cake. Defendants' motions to quash their arrests are therefore denied.

To the extent Defendants base their motions on the alleged acts of the officers with respect to Individual A (the traffic stop and seizure of narcotics from the Malibu), their arguments are without merit. Fourth amendment rights are personal—there is no vicarious assertion of a fourth amendment violation. United States v. Fuesting, 845 F.2d 664, 672 (7th Cir. 1988). Additionally, to the extent Defendants seek to suppress the money discarded during flight and seized by the police based upon the alleged acts of the police in effectuating their arrests, the motions are denied. The exclusionary rule does not provide a remedy for alleged excessive force collateral to a legal seizure. United States v. Collins, 714 F.3d 540, 543 (7th Cir. 2013) (citing United States v. Watson, 558 F.3d 702, 704 (7th Cir. 2009)).

Next, Defendants argue that the search warrant was invalid and therefore the Court should suppress the evidence seized from Defendants' apartment, including approximately 100 kilograms of cocaine, $500,000 in United States currency, two money counters, a heat sealer, three boxes of heat sealed bags, one box of vacuum sealed rolls, and two ledgers containing information about drug transactions. Defendants argue that the evidence discovered pursuant to the warrant is inadmissible because it was secured from a state-court judge through the use of illegally obtained supporting information. "But '[a] search warrant obtained, in part, with evidence which is tainted can still support a search if the untainted information, considered by itself, establishes probable cause for the warrant to issue.'" United States v. Scott, 731 F.3d 659, 664 (7th Cir. 2013) (quoting United States v. Gray, 410 F.3d 338, 344 (7th Cir. 2005)) (alteration in original) (additional citation omitted). To determine whether evidence discovered pursuant to a warrant must be suppressed, the Court considers: "(1) whether the illegally obtained evidence affected the judge's decision to issue the warrant; and (2) whether the decision to seek the warrant was prompted by information unlawfully obtained." Id. (citations omitted).

"'[I]n issuing a search warrant, a [judge] is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense,' including, in a drug-related case, the inference that evidence of drug dealing is likely to be found where the dealer lives." Id. at 665 (quoting United States v. Singleton, 125 F.3d 1097, 1102 (7th Cir. 1997)) (second alteration in original). The Court reviews the determination of probable cause with great deference. Id. The Court's duty is "simply to ensure 'that the [judge] had a substantial basis for concluding that probable cause existed.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)) (alteration in original).

Here, the affidavit sets forth the details of the narcotics investigation: the officers' observation of an apparent drug deal, the stop of the Malibu and recovery of a brick-like object consistent with the appearance of narcotics, the attempt to stop Defendants; Defendants' flight; the recovery of money found in the area where Defendants were found hiding under a porch; Defendants' statements, including where they lived as well as inculpatory statements that the apartment contained a large amount of narcotics and money; and Defendants' written consent to a search of their apartment. Defendants argue that aside from their statements, the officers had no evidence linking them to the 3605 S. Leavitt, 2nd Floor address, and that their statements and consent were otherwise involuntary because they were made in response to threats, force, and promises of leniency. However, routine inquiries such as "what is your name?" and "where do you live?" are lawful even absent <u>Miranda</u> warnings and do not violate the Fifth Amendment right against self-incrimination. <u>United States v. Edwards</u>, 885 F.2d 377, 385 (7th Cir. 1989). Even assuming that Defendants' inculpatory statements and consent to search were illegally obtained, the affidavit police submitted to the state-court judge contained sufficient facts—apart from the statements and consent—to establish probable cause to search Defendants' apartment for evidence of narcotics trafficking. Likewise, the untainted information set forth in the affidavit was sufficient to prompt these experienced narcotics officers to seek the search warrant absent the inculpatory statements and consent. Accordingly, Defendants' motion to suppress evidence seized from the search of their apartment is denied.

Finally, the government concedes that an evidentiary hearing is appropriate to resolve factual issues regarding the voluntariness of Defendants' post-arrest statements. Accordingly, the Clerk shall take the necessary steps to send the matter to the assigned magistrate judge to conduct an evidentiary hearing on the motion to suppress limited to the following issues:

(1) whether Defendants received full warnings of their constitutional rights as required by Miranda; (2) whether Defendants waived those rights; and (3) whether threats, force, or promises of leniency were made, rendering Defendant's statements involuntary.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to their quash arrests and suppress physical evidence, and invalidate consent are denied. Defendants' motions to suppress post-arrest statements remain under advisement.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 12, 2013